

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00156-CR

_____

SHAWN SMITH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13F0106-102

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Carter

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## O P I N I O N

A jury convicted Shawn Smith of two counts of indecency with a child by sexual contact and one count each of aggravated sexual assault of a child, injury to a child, and assault causing bodily injury. Pursuant to findings of true to the State's enhancement allegations, Smith was sentenced to ninety-nine years' imprisonment each for the indecency with a child by sexual contact and aggravated sexual assault offenses, twenty-five years' imprisonment for injury to a child, and one year in county jail for assault causing bodily injury. Smith appeals these convictions.[1]

On appeal, Smith argues (1) that due to a fundamental error, the State's indictment failed to charge him with commission of the offense of injury to a child, (2) that the trial court erred in failing to grant his motion to quash the aggravated sexual assault count of the State's indictment, (3) that he was improperly tried *in absentia* during the punishment phase of his trial, and (4) that the trial court erred in admitting a DNA laboratory report without affording Smith the right to confront the serologist who conducted the DNA testing.

We overrule Smith's first two points of error because we find that the State's indictment is not fundamentally defective and that it provided Smith with constitutional notice of the charges against him. We further find that the trial court did not abuse its discretion in finding that Smith voluntarily absented himself from the punishment phase of his trial and that Smith failed to preserve a Confrontation Clause objection to the laboratory report. Accordingly, we affirm the trial court's judgment.

---

[1]The jury acquitted Smith on two other counts of indecency with a child by sexual contact.

## I.     The Indictment Is Not Fundamentally Defective

Smith's first point of error on appeal questions whether the State properly indicted him for the offense of injury to a child.  "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense." TEX. CONST. amend. V, § 12(b). "[A]n instrument which is not an indictment or information under Article V, Section 12 of the Texas Constitution fails to vest the trial court with jurisdiction." *Mantooth v. State*, 269 S.W.3d 68, 72 (Tex. App.—Texarkana 2008, no pet.).

Count 4 of the State's indictment alleged,

**Injury to a Child**

> And it is further presented . . . that [] on or about <u>January 19, 2013</u>, the said <u>Shawn Lewis Smith</u>, did then and there intentionally or knowingly [sic] bodily injury to <u>Shelby Jones (a pseudonym)</u>, a child who was then and there <u>14</u> years of age or younger, by <u>beating Shelby Jones (a pseudonym) with a belt.</u>

A person commits the offense of injury to a child if he intentionally or knowingly causes bodily injury to a child.  TEX. PENAL CODE ANN. § 22.04(a)(3) (West Supp. 2014).  Due to the State's omission of the term "caused" following the alleged mens rea, Smith argues that count 4 of the State's indictment is fundamentally defective and failed to confer jurisdiction upon the trial court because it "omitted the required causation element."

Smith concedes that "[a]lthough [he] objected to the indictment, [he] did not object to the indictment on th[e] basis" now raised on appeal,[2] but correctly argues that a complaint that an

---

[2]In order to preserve error when preservation is required, a point on appeal must comport with the objection made at trial.  *See* TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

3

indictment is so defective that it deprives the trial court of jurisdiction can be raised for the first time on appeal. *Mantooth*, 269 S.W.3d at 72 (citing *Duron v. State*, 956 S.W.2d 547, 555 (Tex. Crim. App. 1997) (Womack, J., concurring); *Cook v. State*, 902 S.W.2d 471, 479–80 (Tex. Crim. App. 1995); *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007)). However, as we explain below, the indictment is not fundamentally defective.

"The sufficiency of an indictment is a question of law." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). "'[T]o comprise an [information] within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense.'" *Mantooth*, 269 S.W.3d at 72 (quoting *Cook*, 902 S.W.2d at 477). "'[A] written instrument is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective.'" *Id.* (quoting *Duron*, 956 S.W.2d at 550–51).

The State's indictment unquestionably omitted the word "caused." However, the indictment clearly states that the offense alleged is injury to a child. Further, it is clear from the indictment as a whole that the State is alleging the injuries resulted from Smith intentionally or knowingly beating Jones with a belt. We have previously held that an "omission of an element of the offense [] does not prevent the instrument from being an information." *Id.* (citing *Studer v. State*, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990)). Likewise, "[b]ecause the information is sufficient to identify the penal statute under which the State intends to prosecute, the error is not a 'fundamental' error." *Id.*

4

"[I]ndictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court, and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance." *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). Because defects in indictments are subject to waiver, the existence of such defects does not render the indictment void. *See id.* at 178; *Piland v. State*, 453 S.W.3d 473, 479–80 (Tex. App.—Texarkana 2014, pet. filed) (concluding that by failing to raise the issue with the trial court, defendant waived complaint that indictment was defective because it failed to specify any level of mens rea). Specifically, Article 1.14 of the Texas Code of Criminal Procedure provides, in part,

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity[,] and he may not raise the objection on appeal or in any other postconviction proceeding.

TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). The omission of the term "caused" was a defect that Smith was required to raise with the trial court. *See id.*

We overrule Smith's first point of error because (1) the indictment was not fundamentally defective and (2) Smith failed to raise a complaint of form or substance in the trial court with respect to count 4 of the State's indictment.

## II. The Trial Court Did Not Err in Overruling Smith's Motion to Quash the Aggravated Sexual Assault Count

We conduct a de novo review of a trial court's denial of a motion to quash. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009); *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). "A defendant has a constitutional right to sufficient notice so as to enable him or her to prepare a defense." *Hughen v. State*, 265 S.W.3d 473, 481 (Tex. App.—Texarkana 2008), *aff'd*,

5

297 S.W.3d 330 (Tex. Crim. App. 2009). Thus, to ensure proper notice, "the indictment must be specific enough to inform the defendant of the nature of the accusations against him." *Smith*, 297 S.W.3d at 267; *see State v. Mays*, 967 S.W.2d 404 (Tex. Crim. App. 1998) (en banc).

Count 1 of the State's indictment contained a notation specifying that it alleged the offense of "Aggravated Sexual Assault-Child Victim (22.021PC)." Section 22.021 of the Texas Penal Code states,

> (a) A person commits an offense:
>
> (1) if the person:
>
> . . . .
>
> (B) intentionally or knowingly:
>
> (i) causes the penetration of the anus or sexual organ of a child by any means; and
>
> . . . .
>
> (2) if:
>
> (A) the person:
>
> . . . .
>
> (ii) by acts or words places the victim in fear that . . . death, serious bodily injury, or kidnapping will be imminently inflicted on any person.

TEX. PENAL CODE ANN. § 22.021(a) (West Supp. 2014). In the body of the indictment, the State alleged that Smith,

> [o]n or about January 24, 2013, did then and there intentionally or knowingly cause the penetration of the sexual organ of Shelby Jones (a pseudonym), a child who was then and there younger than 17 years of age, by defendant's sexual organ, and the

6

defendant did then and there by acts or words threaten to cause, or place, [Jones] in fear that death would be imminently inflicted on [Jones] and said acts or words occurred in the presence of [Jones].

Smith concedes that the indictment alleged all necessary elements of aggravated sexual assault of a child. Yet, on August 12, 2014, Smith moved to quash count 1 of the indictment on the ground that he had insufficient notice of the allegation because the State "failed to allege what type act or words the Defendant is alleged to have done or said." On appeal, Smith argues that the trial court erroneously overruled his motion to quash count 1 because the indictment alleged nine possible aggravating factors. Specifically, Smith argues that according to the State's indictment, the sexual assault could have been aggravated in the following nine ways:

(1)     by "voluntary bodily movement" [that] places the victim in fear that death would be imminently inflicted on her,

(2)     by "involuntary bodily movement" [that] places the victim in fear that death would be imminently inflicted on her,

(3)     by "speech" [that] places the victim in fear that death would be imminently inflicted on her,

(4)     by "word" [that] places the victim in fear that death would be imminently inflicted on her,

(5)     by "voluntary bodily movement" occurring in the presence of the victim [that] threatens to cause the victim's death,

(6)     by "involuntary bodily movement" occurring in the presence of the victim [that] threatens to cause the victim's death,

(7)     by "speech" occurring in the presence of the victim [that] threatens to cause the victim's death,

7

(8)     by "word" occurring in the presence of the victim [that] threatens to cause the victim's death, or

(9)     [because] the victim is younger than 14 years of age.

We remain unpersuaded by Smith's argument. Under Section 22.021 of the Texas Penal Code, the crime is aggravated if:

(A)     the person:

     (i)     causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode;

     (ii)     by acts or words places the victim in fear that any person will become the victim of an offense under Section 20A.02(a)(3), (4), (7), or (8) or that death, serious bodily injury, or kidnapping will be imminently inflicted on any person;

     (iii)     by acts or words occurring in the presence of the victim threatens to cause any person to become the victim of an offense under Section 20A.02(a)(3), (4), (7), or (8) or to cause the death, serious bodily injury, or kidnapping of any person;

     (iv)     uses or exhibits a deadly weapon in the course of the same criminal episode;

     (v)     acts in concert with another who engages in conduct described by Subdivision (1) directed toward the same victim and occurring during the course of the same criminal episode; or

     (vi)     administers or provides flunitrazepam, otherwise known as rohypnol, gamma hydroxybutyrate, or ketamine to the victim of the offense with the intent of facilitating the commission of the offense;

(B)     the victim is younger than 14 years of age; or

(C)     the victim is an elderly individual or a disabled individual.

TEX. PENAL CODE ANN. § 22.021(a)(2).

Here, The State's indictment clearly tracked the language of Section 22.021(a)(2)(A)(ii). The State did not allege (1) that Smith caused serious bodily injury or attempted to cause Jones' death, (2) that Smith used or exhibited a deadly weapon, acted in consert with another, or administered any drugs to Jones, or (2) that Jones was a child younger than fourteen years of age or was an elderly or disabled individual. Because the State alleged that the acts or words threatening Jones amounted to a threat that death would be imminently inflicted upon her, the State alleged a violation of subsection (a)(2)(A)(ii), not (iii). Also, since the State alleged that Smith's acts were intentional or knowing, the words or acts used to threaten Jones' death were alleged to be voluntary.

"Subject to rare exceptions, an indictment tracking the language of the statute will satisfy constitutional and statutory requirements; the State need not allege facts that are merely evidentiary in nature." *Mays*, 967 S.W.2d at 406. However, "[a] statute which uses an undefined term of indeterminate or variable meaning requires more specific pleading in order to notify the defendant of the nature of the charges against him." *Id.* at 407. The term "Act" is defined as "a bodily movement, whether voluntary or involuntary, and includes speech." TEX. PENAL CODE ANN. § 1.07(a)(1) (West Supp. 2014).

Presumably, the term "act" on its own could have indeterminate or variable meanings. Neither Smith's research nor ours uncovers a case addressing whether the term "act" is so indefinite as to require further notice. However, Texas courts considering the term "force" within the context of our predecessor sexual assault of an adult statute have rejected the argument that further pleading is required, even though the act is only prohibited when it is non-consensual and

9

three out of ten instances in which the prohibited act is non-consensual involve the use of force. *See Tullous v. State*, 23 S.W.3d 195, 197 (Tex. App.—Waco 2000, pet. ref'd) (citing *Johnson v. State*, 623 S.W.2d 654, 655 (Tex. Crim. App. 1981); *Brem v. State*, 571 S.W.2d 314, 317 (Tex. Crim. App. [Panel Op.] 1978); *Watson v. State*, 548 S.W.2d 676, 678–79 (Tex. Crim. App. 1977)); *see also* Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 3, 1983 Tex. Gen. Laws 5311, 5312 (amended, most recently, 2009) (current version at TEX. PENAL CODE ANN. § 22.011(b) (West 2011)).

In reasoning that the term "force" was not so indefinite, in the context of the sexual assault statute, as to require further pleading, the court in *Watson* observed:

> The only type of "force" which will support a rape conviction is that which "overcomes such earnest resistance as might reasonably be expected under the circumstances." The only type of "threat" which will support a rape conviction is that which "would prevent resistance by a woman of ordinary resolution." The indictment in effect alleged what had to be proved. When the terms "force" and "threats" were used in the indictment, the appellant was given adequate notice of the offense with which he was charged . . . .
>
> While generally it is better practice to describe the offense in the indictment in the words of the statute, the instant indictment was not fundamentally defective. It is not necessary that an indictment for rape allege the character of the force or specify the threats. The use of the general terms as in the instant indictment is sufficient.

*Watson v. State*, 548 S.W.2d 676, 678–79 (Tex. Crim. App. 1977) (footnotes omitted) (citations omitted).

Similarly, here, the acts or words, as alleged in the State's indictment, must have been acts or words occurring in Jones' presence either threatening to cause Jones' death or placing her in fear of death. The indictment tracked the language of the statute and provided notice of the exact

10

subsection under which the indictment was brought. Thus, we conclude that the State, in the indictment, was required to neither allege the character of the acts or words used by Smith nor further specify the manner in which the death threats were made. *See id.* Accordingly, the trial court did not err in failing to quash the State's indictment.

Moreover, "When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend." *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). Here, during an interrogation, an investigator informed Smith that Jones claimed Smith raped her after waking her up by choking her, holding a gun close to her, and telling her that either she had to kill him or he would rape her and would "beat [her] ass to death." Thus, Smith had notice of the theory against which he would have to defend.

We overrule Smith's second point of error.

**III. In this Case, the Trial Court's Decision to Proceed with the Punishment Phase in Smith's Absence Was Not an Abuse of Discretion**

"One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). Article 33.03 of the Texas Code of Criminal Procedure provides that a defendant must be personally present at the trial of a felony unless he "voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, [in which case] the trial may proceed to its conclusion." TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). Thus, "[a]fter commencement of trial proceedings, a defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be

11

present during all phases of the trial." *Ashley v. State*, 404 S.W.3d 672, 680 (Tex. App.—El Paso 2013, no pet.) (citing *Taylor v. United States*, 414 U.S. 17, 18–19 (1973) (per curiam); *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985); *Tracy v. State*, 14 S.W.3d 820, 826 (Tex. App.—Dallas 2000, pet. ref'd)). "This is because the Supreme Court has recognized that a defendant's conduct in voluntarily absenting himself after his trial has commenced with him in attendance amounts to a forfeiture of his Sixth Amendment right to be present during the time he is absent." *Id.* (citing *Taylor*, 414 U.S. at 18–19; *Miller*, 692 S.W.2d at 90–91). In his third point of error, Smith argues that the trial court incorrectly concluded that he absented himself from the punishment phase of his trial.

Smith testified at length during the guilt/innocence phase of his own trial. After his cross-examination, the record indicates that Smith attempted suicide. Prior to the trial court's reading of the jury's guilt/innocence verdict, the trial court informed counsel for both sides that according to the bailiff, Smith had tried to hang himself while in jail. After being sworn in, the bailiff testified,

> This morning I received a phone call from Ed Miller advising me that Shawn Smith had gotten out of the cell and had gotten up in the pipe chase, and they were unable to find him. Several minutes later, I got another phone call that said they had located him. He had hung himself, and he was stuck in the pipe chase. And they were trying to get him out. I went down to the annex and met with Captain Walker and some other correctional officers, and by the time I got down to the end of alpha deck where they were housing him, he was on the top of the cell on a stretcher. And they had ropes and stuff tied to it, lowering it down with him strapped to it. They loaded him in the back of an ambulance and took him to Wadley [Regional Medical Center] and admitted him into the hospital. And I received a text message from the officer there that was with Shawn just moments ago saying that all they knew at that time was that he had a broke bone in his knee.

12

After hearing the bailiff's testimony, Smith's counsel stated,

> [BY THE DEFENSE]: Your Honor, if the Court finds that this is a voluntary absentia from trial . . . . I'm aware that the Court can continue the trial. With that, assuming the facts that [the bailiff] has been told are true, I can see the Court's decision to find that it is a voluntary absentia and with the alleged attempted suicide. But now that the attempted suicide has failed, I don't know if it would still be a voluntary absentia.

Counsel also told the trial court that at that point, he was unsure whether Smith wished to testify during punishment. The court assured counsel that he would provide Smith with an opportunity to testify. Specifically, the court made the following pledge:[3]

> [A]s we typically do, we visited about these matters before I took the bench, and I think I explained to you off the record that I would allow Mr. Smith, or Shawn, all the opportunity to testify that I can, if he wishes to testify. But I thought perhaps what we'd do this morning, receive the verdicts. If, in fact, they're guilty, let the State put on their case. If you have a witness here, let that witness testify, and then if Mr. Smith at that point in time is unable to be at the courthouse or in the courtroom, I'll continue the trial till we can find out whether or not, one, he wants to testify, and, two, whether or not he can be back in the courtroom.

After the jury verdicts were read, a brief recess was taken, and the trial court held an off-the-record discussion. Based on the trial court's assurances, the punishment phase of the trial began without an objection or a request for continuance.[4] The State argues that Smith failed to preserve this point on appeal because his counsel did not timely object to the trial court's decision to proceed with punishment. Since the record establishes that counsel's failure to object stemmed from the trial court's promises, we disagree with the State's preservation argument. We also note

---

[3]As we explain below, the trial court's assurances were for naught.

[4]The jury heard the following instruction: "The defendant's decision to not be present cannot be held against him, or you must not speculate, guess, or even talk about the defendant's absence from the courtroom during this phase of the trial."

13

that after the jury heard several of the State's witnesses testify on the issue of punishment, the trial court (1) informed counsel that according to the deputy present at the hospital, Smith was still "waiting on a doctor to read the CAT scan and waiting on the orthopedic to come check the x-rays on what they think may be a broken bone in his knee" and (2) gave Smith's counsel the opportunity to make any objection he had previously made in an effort to clarify off-the-record discussions about this subject. At that point, counsel reiterated his argument that Smith was not voluntarily absent, adding that although Smith was in the hospital, he, "[was] not free to leave[,] [was] being guarded in the hospital[,] [and could not] just check himself out and come to trial." In response, the trial court stated that it had received a text from law enforcement advising that Smith had been admitted to the hospital for further treatment. Counsel further argued that the bailiff's testimony as to whether Smith's injuries resulted from a suicide attempt were based on statements made by non-testifying jailors and that no one with first-hand knowledge had testified that Smith's injury was caused by a failed suicide attempt. Again, the trial court found that Smith had voluntarily absented himself.

Proceeding with the punishment phase, Smith's counsel called Smith's aunt, who testified about the brutal beatings that Smith had suffered at the hands of his father and the effect of drugs on his life. Smith's counsel then informed the trial court that he had spoken to Smith, that Smith wished to testify, but that he was being held in the hospital. The trial court informed counsel that it was not denying Smith the right to testify, but counsel did not seek a continuance.[5] Instead,

---

[5]Because the point of error on appeal is whether the trial court abused its discretion in finding that Smith voluntarily absented himself—not whether a request for continuance was improperly denied—counsel's failure to request a continuance does not waive his appellate point.

14

counsel moved the court to order the sheriff's office to bring Smith to court, which the court refused to do because Smith was still in the hospital's care. At that point, Smith's counsel simply asked the court to delay the sentencing so that Smith could be present. The trial court agreed, held a sentencing hearing that Smith attended, and pronounced the sentences in Smith's presence.

We review the trial court's decision that a defendant voluntarily absented himself from trial for an abuse of discretion. *Papakostas v. State*, 145 S.W.3d 723, 725 n.2 (Tex. App.—Corpus Christi 2004, no pet.) (citing *Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984)). "In most instances, the appellate court must determine, from hindsight, the validity of the trial court's determination that the defendant's absence was voluntary." *Hudson v. State*, 128 S.W.3d 367, 375 (Tex. App.—Texarkana 2004, no pet.) (citing *Moore*, 670 S.W.2d at 261). "The defendant must provide evidence to refute the trial court's determination, or we will not disturb the trial court's finding." *Id.* at 375–76.

"[A] defendant cannot avoid trial by intentionally disabling himself." *Mains v. State*, 170 S.W.3d 149, 150 (Tex. App.—Eastland 2005, no pet). Smith concedes that the record contains evidence demonstrating that he voluntarily absented himself from the guilt/innocence phase of the trial, but argues that he was unable to attend the punishment phase "not because he had to receive medical treatment, but because the guards would not allow him to leave the hospital and go to the trial." While we (1) take note of the fundamental nature of a defendant's constitutional right to be present at his trial, (2) disapprove of the trial court's decision to abandon its initial assurances that Smith would be allowed to testify, (3) are concerned about the lack of effort to determine whether Smith, who was able to communicate and wanted to testify, would soon be able to personally

15

appear in court, (4) believe that nothing would have prevented the trial court from aiding Smith, if he wanted to testify, by either allowing him to testify telephonically or by ordering law enforcement to escort him to the courtroom, and (5) point out that the trial court could have exercised its discretion in such a manner that would have provided Smith the opportunity to testify during the punishment phase of his trial, we must disagree with Smith's conclusion that these circumstances constitute an abuse of discretion.

In this case, the bailiff testified that Smith broke his knee and that as a result of a suicide attempt, he was taken to the emergency room where he was receiving medical treatment. The trial court informed the parties that due to his injuries, Smith was admitted into the hospital and was under doctors' care. Guards were likely placed in his room only to prevent escape until he was discharged by the hospital, not to keep him from coming to court and testifying. Although Smith was receiving medical treatment as a result of his suicide attempt, nothing suggests that Smith wanted to forego medical treatment in order to testify at the punishment phase of his trial, or that he was otherwise unable to decline medical treatment and leave the hospital.

A defendant has "no right to interrupt the trial by his voluntary absence."[6] *Taylor*, 414 U.S. at 20. "The busy trial courts of our state cannot stop the wheels of an already burdened

---

[6]The policies underlying this rule have been summarized as follows:

> [T]he policy which underlies the rule, permitting the presiding justice to continue a trial in his or her discretion when a defendant voluntarily absents himself or herself, is obviously sound. If a mistrial were to be declared whenever a defendant is voluntarily absent from trial[,] . . . the defendant could, after evaluating the course of the proceedings, simply leave the courtroom whenever an adverse verdict was anticipated. Voluntary absence would then entitle the defendant to a fresh trial and a second chance at acquittal. . . . [A] defendant's right to a day in court does not permit the defendant to unilaterally select whatever date his or her pleasure dictates.

16

criminal justice system because a defendant chooses to be absent from his own trial." *Sanchez v. State*, 842 S.W.2d 732, 733 (Tex. App.—San Antonio 1992, pet. ref'd). Thus, Texas courts have held that a defendant voluntarily absents himself from trial when he attempts to commit suicide, is placed in a hospital, and, as a result, is not present in the courtroom. *See id.*; *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.); *see also Heard v. State*, 887 S.W.2d 94, 98–99 (Tex. App.—Texarkana 1994, pet. ref'd) (holding absence voluntary when caused by self-induced intoxication). In the absence of any evidence that a defendant's absence was involuntary, we "engage in the presumption that the trial court finding regarding the voluntariness of appellant's absence is correct." *Aguirre v. State*, 695 S.W.2d 793, 794 (Tex. App.—San Antonio 1985, no pet.) (citing *Gonzales v. State*, 515 S.W.2d 920, 921 (Tex. Crim. App. 1974)).

In light of these cases and in the absence of evidence to refute the trial court's determination that Smith voluntarily absented himself from trial—evidence that could have been presented at the sentencing hearing, in a motion for new trial, or otherwise—we cannot conclude that the trial court abused its discretion. Accordingly, we overrule Smith's third point of error.

## IV. Smith Did Not Preserve a Confrontation Clause Objection to the DNA Laboratory Report

In his last point of error on appeal, Smith, asserting a violation of the Confrontation Clause, argues that the trial court erred in admitting a DNA laboratory (lab) report. We find that Smith failed to preserve this point of error for our review.

---

Kurtis A. Kemper, Annotation, *Sufficiency of Showing Defendant's "Voluntary Absence" from Trial for Purposes of State Criminal Procedure Rules or Statutes Authorizing Continuation of Trial Notwithstanding Such Absence*, 19 A.L.R.6th 697 (2006).

17

Odia Russette, a sexual assault nurse examiner, conducted a medical examination of Jones after Jones divulged graphic details of Smith's violent sexual assault against her. Russette collected specimens that were sent to the Texas Department of Public Safety Crime Laboratory (the Crime Lab) for DNA testing. The State called Kristi Link, the Crime Lab's DNA section supervisor and technical leader, to testify. Link testified that she "did DNA testing on the swab" collected from Jones. Later, Link explained that although she did not personally conduct the serology, she did supervise the actual serologists, Kimberlee Mack[7] and Gloria Ruiz.

Because Ruiz was the forensic scientist who prepared and signed the lab report, Smith objected to Link's "testimony about any findings of this lab" on the ground that such testimony would violate the Confrontation Clause since Link was not the serologist who conducted the DNA tests. Link did not testify about the results of the DNA tests or the contents of the lab report. After Link's testimony, Smith reiterated the objection, stating, "[W]e'd object to any of the DNA evidence coming in because the serologist who did all of the serology, we weren't able to cross-exam[ine her] and see if the serology was done correctly." Because Link did not testify about the findings of the DNA lab report and because the State had not yet offered the lab report, the trial court overruled Smith's objection.

Thereafter, the State called Ruiz, who testified that she personally performed the DNA analysis and personally prepared the report.[8] After Ruiz explained that she was serologist who

---

[7]Mack did not testify. Although she also prepared a serology report, the State did not offer Mack's report as evidence.

[8]When asked, "Now, did you personally perform a DNA analysis of known samples of both the defendant, Shawn Smith, and the victim . . . along with evidentiary samples provided in a rape kit? Did you make the comparison?" Ruiz replied, "Yes. I made the interpretation of the profiles to determine if the suspect or the victim contributed to the evidentiary profile that I obtained."

examined and compared DNA from Jones' specimens to DNA found on Smith's buccal swab, the State offered Ruiz' lab report, which revealed that sperm cell fractions and epithelial cell fractions collected from Jones' specimens were "consistent with a mixture from the victim and Shawn Smith." When the report was offered as evidence, Smith only lodged a hearsay objection, abandoning any Confrontation Clause objection he had previously raised.[9]

The State argues that Smith failed to preserve his appellate complaint that the Confrontation Clause prohibited the admission of the DNA report because Smith "was denied the opportunity to cross examine the serologist who actually conducted the testing." We agree.

"To preserve error, it has been consistently held that one must object each and every time [allegedly] inadmissible evidence is offered." *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)). Smith lodged a Confrontation Clause objection to "any of the DNA evidence coming in" prior to either Ruiz' testimony or the State's offer of the lab report. Smith did not obtain a running objection on the Confrontation Clause issue and, when the State actually offered the report, failed to object to its admission on Confrontation Clause grounds. Instead, Smith only objected to the report on hearsay grounds; however, a hearsay objection does not preserve error on Confrontation Clause grounds. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004).

---

[9]Smith's appellate brief makes no mention of Ruiz. Both Link and Ruiz testified that they conducted the DNA testing, and Ruiz testified that she personally prepared the report. Smith took advantage of his opportunity to cross-examine both Link and Ruiz.

We find that Smith failed to preserve his Confrontation Clause objection to the lab report. Accordingly, we overrule Smith's last point of error.

## IV.    Conclusion

We affirm the trial court's judgment.


                              Jack Carter
                              Justice

Date Submitted:     May 6, 2015
Date Decided:       June 16, 2015

Publish